**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BRAUDE & MARGULIES, P.C.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 05-649 (RMC)** |
| ) | |
| **FIREMAN'S FUND INSURANCE** ) | |
| **COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OPINION**

Braude & Margulies, P.C. ("B&M") is a law firm that specializes in construction law. Because its client, J.A. Jones Construction Company ("Jones"), dissolved after bankruptcy without paying B&M for work on two matters, B&M attempts to recover attorneys' fees by bringing suit against Fireman's Fund Insurance Company ("Fireman's"), who was surety for Jones on the two projects. Unfortunately for B&M, none of the theories it advances is sufficient to establish liability on the part of Fireman's for Jones's legal bills. The Amended Complaint will be dismissed.

**I.  BACKGROUND FACTS**

Fireman's is a surety company. Am. Compl. ¶ 6. It issued performance and payment bonds to Jones for construction projects at the Venetian Resort and Casino Complex in Las Vegas, Nevada (the "Venetian Project") and at the J. Murray Atkins Library at the University of North Carolina (the "Atkins Project"). *Id.* ¶¶ 6-8. Under the performance bonds, Jones agreed to indemnify and hold Fireman's harmless in the event a claim were made against Jones for alleged failure to perform its construction duties. *Id.* ¶ 6.

When disputes arose concerning the two Projects, Jones retained B&M to represent it.  *Id*. ¶ 8.  Jones and B&M entered into two separate written contingency agreements under which B&M was to receive specified percentages of any affirmative recoveries that it was able to obtain for Jones.  *Id*. ¶¶ 15 & 28, Exs. D & F.  B&M also agreed to represent Jones on any counterclaims that might be asserted against Jones in the litigation.  *Id*. ¶ 16 & 29.  Fireman's was not a party to the retainer agreements but, as surety, it had also been named as a defendant in the two suits.  *Id*.  As described by B&M, it also represented Fireman's in the two lawsuits because "the adverse parties asserted claims and/or counterclaims against both Jones and [Fireman's]" so that B&M defended Fireman's "pursuant to Jones's indemnification obligation."  *Id*. ¶ 53.

The case involving the Venetian Project went to trial in 2002.  *Id*. ¶ 18.  The jury awarded Jones $1.15 million in damages from Lehrer McGovern Bovis ("LMB") and found that LMB was not entitled to any recovery from Jones or from Fireman's on LMB's counterclaims.  *Id*.  LMB did not appeal the jury verdict in Fireman's favor, so Fireman's dropped out of the suit.  Jones appealed the jury's award, arguing that its recovery was insufficient and the instructions concerning damages were improper.  *Id*. ¶ 20.  The Nevada Supreme Court reversed the judgment, in part, in May 2004, and remanded to the trial court for a new trial.  *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis*, 89 P.3d 1009 (Nev. 2004).  The case was continued indefinitely in February 2005.  Am. Compl. ¶ 25.

The Atkins Project dispute ended with a negotiated settlement in March 2004, under which both parties dropped their respective claims against each other and signed mutual releases.  *Id*. ¶ 31.  At the time of this settlement, Herman Braude, a principal of B&M, proposed a new fee arrangement with Fireman's representatives to supercede the prior arrangement with Jones.  *Id*. ¶ 32.

-2-

Mr. Braude proposed, informally and then in writing, that Fireman's pay B&M $100,000 as the reasonable value of the services rendered by B&M in reaching the settlement; since, by that time, Jones was protected by Chapter 11, B&M reasoned that its services actually benefitted Fireman's which might otherwise have had to pay out any award against Jones. *Id*. ¶ 32 & Ex. G. Ron Wills, Fireman's in-house attorney who acted as the surety's representative throughout the settlement discussions, contacted Mr. Braude in early April 2004 and informed him that the fee was reasonable and would be paid. *Id*. ¶ 33. Despite this assurance and further invoices sent to Fireman's, Fireman's has never paid B&M for its work on the settlement of the Atkins Project dispute.

In the meantime, as indicated, Jones filed for bankruptcy protection under Chapter 11 on September 25, 2003. *Id*. ¶ 9. The case was filed in the Bankruptcy Court for the Western District of North Carolina, and Fireman's was a major creditor. *Id*. In October 2003, Jones requested, and received, authorization from the Bankruptcy Court to continue to retain B&M for the disputes concerning the Venetian and Atkins Projects. *Id*., Exs. A & B. These matters were to be handled on a 25% contingency fee basis. *Id*., Ex. A.

On February 6, 2004, the Bankruptcy Court entered an order concerning the prosecution of certain bonded construction litigation involving Jones ("Construction Litigation Order"). The Construction Litigation Order appointed the sureties on Jones's construction projects, including Fireman's, to be representatives of Jones "for the purpose of prosecuting, liquidating and collecting the Bonded Claims." *Id*., Ex. C ¶ 4. Sometime in 2004 after entry of the Construction Litigation Order, Fireman's attorneys informed B&M that Fireman's would be taking over all of Jones's pending construction disputes on which it had been surety, including the Venetian and Atkins Projects. *Id*. ¶ 24. In January 2005, Fireman's terminated B&M by instructing the law firm

to cease any further filings or appearances in connection with the re-trial of the Venetian lawsuit. *Id*. ¶ 25.  As of February 2005, B&M had incurred more than 5,000 hours of attorney time in bringing that case through trial, the appeal process, and preparing the case for re-trial. *Id*. ¶ 26.  At B&M standard billing rates, those hours were worth more than $950,000. *Id*.

B&M seeks to recover attorneys' fees owed for its work on the Venetian and Atkins disputes, and thus it brought suit against Fireman's with a six-count Amended Complaint:

1.   Count I: Breach of an express contract relating to the representation of Jones and Fireman's in the Venetian Project dispute.

2.   Count II: Breach of an implied contract relating to the representation of Jones and Fireman's in the Venetian Project dispute.

3.   Count III: Breach of an express contract relating to the representation of Jones and Fireman's in the Atkins Project dispute.

4.   Count IV: Breach of an implied contract relating to the representation of Jones and Fireman's in the Atkins Project dispute.

5.   Count V: Quantum meruit for services rendered relating to both disputes.

6.   Count VI: Account stated for services rendered relating to the Atkins Project dispute.

Fireman's has filed a motion to dismiss.

## II.  LEGAL STANDARDS

### A.  Jurisdiction

Jurisdiction in this case rests in diversity, as the litigants are citizens of different states

and the amount in controversy is over $75,000.  28 U.S.C. § 1332(a).  B&M is a professional

corporation organized under the laws of the District of Columbia, where its principal place of

business is located.  Fireman's is a California corporation and its principal place of business is in

California.  B&M seeks attorneys' fees totaling more than $950,000.

           B.  Standard of Review

           Fireman's has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12 (b)(6).  A Rule

12(b)(6) motion "tests the legal sufficiency of the complaint." *ACLU Found. of S. Cal. v. Barr*, 952

F.2d 457, 472 (D.C. Cir. 1991).  Under Rule 12(b)(6), a court "does not test whether the plaintiff will

prevail on the merits, but instead whether the claimant has properly stated a claim." *Price v. Crestar*

*Secs. Corp.*, 44 F. Supp. 2d 351, 353 (D.D.C. 1999).   In reviewing such a motion, the court accepts

the allegations in the non-movant's pleading as true and draws all reasonable inferences in the non-

movant's favor.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Sinclair v. Kleindienst*, 711 F.2d

291, 293 (D.C. Cir. 1983).   However, the court need not accept as true plaintiff's legal conclusions.

*See Papasan v. Allain*, 478 U.S. 265, 286 (1986).   "Nor must [the court] accept as true the

complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject

to judicial notice." *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004).  A complaint may not be

dismissed on a Rule 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45-46.  In

deciding a 12(b)(6) motion, the Court "may only consider the facts alleged in the complaint,

documents attached as exhibits or incorporated by reference in the complaint, and matters about

which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196

(D.D.C. 2002) (citation omitted).  A court may take judicial notice of public records from other court

proceedings. *Covad Comms. Co. v. Bell Atlantic Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005). Here, the Court takes judicial notice of the pleadings and orders of the Bankruptcy Court for the Western District of North Carolina, which were provided as exhibits to the pleadings in this case.

## III.  ANALYSIS

B&M is attempting to recover from Fireman's "as a former client that has not paid its agreed upon fees" with respect to the Atkins Project, and as "a former client who has discharged B&M from its contingent fee employment without cause" with respect to the Venetian Project.  Pl.'s Mem. of P. & A. in Opp. to Def.'s Mot. to Dismiss ("B&M Opp.") at 11.[1]  Concerning the Atkins Project, B&M's theory is straightforward:  Fireman's agreed to pay B&M $100,000 and has failed to do so.  Concerning the Venetian Project, B&M's theory is  that pursuant to the Construction Litigation Order, Fireman's stands in the shoes of Jones, and succeeds to Jones's rights *and existing obligations*.  Fireman's insists that it owes nothing to B&M.  The Court will address each Project in turn.

### A.  Breach of Contract – Atkins Project

Fireman's does not deny that it promised to pay $100,000 to B&M for its work on settling the Atkins Project dispute but instead argues convincingly that the promise is unenforceable. B&M's fee claim is based on "an oral agreement that was entered into between B&M and [Fireman's] around the same time that settlement negotiations were being completed."  B&M Opp. at 17; *see* Am.

---

[1]  Fireman's asserts that this is really an effort to collect fees owed by Jones and that venue lies in the Bankruptcy Court in the Western District of North Carolina, not here.  The Court disagrees.  Whatever the merits of B&M's claims, they are clearly directed to its putative relationship with Fireman's.  Inasmuch as B&M is located in Washington, D.C., and thus must have rendered a substantial portion of the legal services at issue in its D.C. office, venue is proper here.  28 U.S.C. § 1391(b)(2) (a plaintiff can bring an action in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

Compl. ¶ 32 ("At the same time that the Murray Atkins Library project was settled, and before it was finally approved by the State of North Carolina, Herman Braude proposed a new fee arrangement" to Fireman's).  Citing *Murray v. Lichtman*, 339 F.2d 749, 752 n.5 (D.C. Cir. 1964), Fireman argues that "past consideration is no consideration," so that any promise to pay B&M *after* its work on the Atkins Project was completed lacked consideration.

Not surprisingly, B&M resists this conclusion.  It asserts that Fireman's agreed to pay B&M "at a time contemporaneous to the rendering of B&M's services to [Fireman's], and before they were fully completed."  B&M Opp. at 22.  This contention is belied by the allegations set forth in the Amended Complaint, and these allegations are the Court's guide.   Mr. Braude *proposed* a new fee arrangement to Fireman's "[a]t the same time that the Murray Atkins Library project was settled." Am. Compl. ¶ 32.  All that remained was formal approval by the State of North Carolina.  *Id.* Fireman's attorneys "agreed that a new fee arrangement with B&M should be made" and asked for a written proposal.  *Id.*  On March 11, 2004, Mr. Braude sent a proposal for a fee of $100,000 to Mr. Wills at Fireman's.  *Id.* ¶ 33.  "[I]n or around early April 2004," Mr. Wills contacted Mr. Braude and told him that Fireman's would pay the fee."  *Id.*  This sequence supports Fireman's argument here — the new, superceding fee arrangement was proposed and accepted *after* the dispute was settled.

Indeed, the March 11, 2004, letter from Mr. Braude to Mr. Wills at Fireman demonstrates that no "agreement" to pay B&M fees had yet been reached.  As material here, the letter read:

> Reference is made to our phone discussion today concerning the status of the mediation process on the [Atkins] project.
>
> . . .

> [I]f I had not made the claim back in 2001 [for an equitable set-off for Jones against the claims of North Carolina] and worked for more than 3-1/2 years on the close out of the contract, Fireman's Fund probably would have had to pay some uncertain sum to close out the contract, whether for liquidated damages, defective cast stone, or even as a contribution to the curtain wall problem.  As such, Fireman's Fund got the benefit of my efforts expended over the last several years, and $100,000 seems to be a minimum reasonable amount for the services rendered.

*Id.*, Ex. G.  Fee statements for $100,000, based explicitly on this letter, were sent to Fireman's on April 30, May 21, and December 1, 2004, and on January 15, February 7, and March 14, 2005.  *Id.*, Ex. H.

Tellingly, the March 11 letter did not say that it was written to "confirm" the parties' agreement or that it was intended to "memorialize" the parties' agreement.  Rather, it presented B&M's reasoning for its claim that Fireman's *should agree* to compensate B&M for the time spent negotiating a settlement of the Atkins Project dispute.  B&M asserts that Mr. Wills later called to confirm the agreement and that Fireman's would pay the firm $100,000.  While it may be more legal than nice, Fireman's argument that any such "acceptance" of the firm's proposed fee post-dated the actual representation cannot be gainsaid.  Thus, there was, as a matter of law, no consideration for the promise to pay, as past consideration is not adequate to support a present promise.  *Murray*, 339 F.2d at 752 n.5 ("past consideration is no consideration") (citing 1 Williston, Contracts § 142 (3d ed. 1957)).

In addition, B&M had a preexisting obligation to represent Fireman's, due to Jones's obligation to indemnify the surety.  While the logic of the law firm's request for fees is strong — Fireman's benefitted from the settlement more than Jones, which was protected by Chapter 11 — that cannot change the fact that B&M already represented the interests of Fireman's according to its

-8-

retainer with Jones.  "Where there is a preexisting duty to perform an obligation, a promise to perform

the same obligation may not serve as consideration."  *Rost v. Nat'l R.R. Passenger Corp.*, No. 88-

6598, 1992 WL 220995, * 5 (E.D. Pa. Aug. 31, 1992) (applying D.C. law).[2]  Because there was no

valid express contract between B&M and Fireman's regarding the Atkins dispute, B&M's claim for

breach of contract must be dismissed.

### B.  Breach of Contract – Venetian Project

B&M also seeks attorneys' fees from Fireman's for B&M's work on the Venetian

Project dispute.  B&M argues that pursuant to the Construction Litigation Order, Fireman's stands

in the shoes of Jones and succeeds to Jones's rights *and existing obligations*.  However, the express

language of the Construction Litigation Order does not support this claim.  The Order appointed the

sureties on Jones's construction projects, including Fireman's, to be representatives of Jones "for the

purpose of prosecuting, liquidating and collecting the Bonded Claims."  Am. Compl., Ex. C ¶ 4.  The

Bankruptcy Court subsequently issued an "Order Clarifying Terms of Construction Litigation Order."

Fireman's Mot. to Dismiss, Ex. C.  The Clarifying Order states:

> Notwithstanding the Sureties' role as "estate representative" for . . .
> Debtors, nothing in the Order shall be construed to mean that the
> Sureties shall be deemed to replace or substitute the Debtors as the real
> party or party in interest to any pending or prospective suit or action
> brought against or involving the Debtors.  Instead, the Sureties are
> acting for and on behalf of the Debtors in their roles as estate
> representatives, which is separate and apart from the status as Sureties.

*Id.*, Ex. C ¶ D.  There simply are no provisions in the Construction Litigation Order or the Clarifying

Order that purport to assign any of Jones's contractual liabilities to Fireman's.

---

[2] The parties agree that District of Columbia law applies in this case, as the briefs cite and focus upon D.C. case law.

_____Moreover, the statute of limitations bars B&M's breach of contract claim against Fireman's related to the Venetian Project dispute.  The applicable statute of limitations for breach of contract claims, whether the contract is express or implied, is three years.  D.C. Code § 12-301(7).  The statute of limitations runs from the time of the breach or completion of the contract.  *Computer Data Sys., Inc. v. Kleinberg*, 759 F. Supp. 10, 15 (D.D.C. 1990).

Fireman's interest in the Venetian case was resolved when the jury found that LMB was not entitled to any recovery from Fireman's.  A judgment in favor of Fireman's was entered on February 1, 2002.  Fireman's Mot. to Dismiss, Ex. D.  LMB did not appeal.  Am. Compl. ¶ 19.  Thus, all services that B&M provided to Fireman's with respect to the Venetian dispute ended on February 1, 2002.  B&M did not file this suit against Fireman's until March 30, 2005, more than three years later.  Thus, the statute of limitations bars B&M's claim for breach of contract regarding the Venetian Project.

### C.  Breach of Implied Contract – Atkins and Venetian

B&M also alleges that Fireman's is liable under the theory of implied contract.  "An implied-in-fact contract is a true contract, containing all necessary elements of a binding agreement; it differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt."  *Vereen v. Clayborne*, 623 A.2d 1190, 1193 (D.C. 1993).  To recover under an implied contract, a plaintiff must show that 1) valuable services were rendered; 2) for the person sought to be charged; 3) which services were accepted, used, and enjoyed by the person sought to be charged; 4) *under such circumstances as reasonably notified the person sought to be charged that the person rendering the service expected to be paid by him*.  *Id*.  It is this fourth element that is at issue here.  The Amended

Complaint does not allege that at the time B&M was rendering services on the Atkins and Venetian

Projects Fireman's was on notice that B&M expected to be paid by Fireman's.

A strikingly similar case was recently decided by the District of Columbia Court of

Appeals in *Jordan Keys & Jessamy, LLP v. St. Paul Fire and Marine Ins. Co.*, 870 A.2d 58 (D.C.

2005).  The law firm of Jordan Keys had entered into an express contract with a hospital to provide

legal services in defending a malpractice claim filed by a former patient.  *Id*. at 60.  St. Paul Fire &

Marine Insurance Company provided excess liability insurance to the hospital, insurance that would

cover the hospital's malpractice liabilities in excess of $1,000,000.  The hospital filed for bankruptcy

protection without having paid its legal bills, and Jordan Keys brought suit against St. Paul, seeking

to recover fees for legal services provided in the malpractice case.  Jordan Keys acknowledged in its

complaint against St. Paul that under its contract with the hospital, its fees were to be paid by the

hospital.  *Id*.

Jordan Keys alleged that St. Paul was liable for attorneys' fees under an implied

contract theory.  The trial court rejected this claim and the court of appeals affirmed,  finding that

Jordan Keys failed to allege the fourth element of an implied contract claim.  "At the time Jordan

Keys provided services to the Hospital, St. Paul was not placed on notice that Jordan Keys expected

to be paid for those services by St. Paul.  On the contrary, as Jordan Keys acknowledges, it contracted

to be paid by its client, the Hospital, and not by the Hospital's excess carrier, a party with which

Jordan Keys had no agreement at all."  *Id*. at 62.

As in *Jordan Keys*, B&M provided services to its client, Jones, under express

contracts.  Am. Compl. ¶¶ 15 & 28, Exs. D & F.  Fireman's was not a party to these contracts.  B&M

explicitly alleges in the Amended Complaint that it defended Fireman's "pursuant to Jones's

indemnification obligation", *id.* ¶ 53, and "to date [Fireman's] has not agreed to pay B&M for its services." *Id.* ¶ 13.  At the time B&M rendered the legal services for which it seeks compensation, Fireman's was not placed on notice that B&M expected to be paid by Fireman's.  B&M expected to be paid by its client, Jones.  Absent notice to Fireman's that B&M expected to be paid by Fireman's, B&M's implied contract claim is untenable.  *Jordan Keys*, 870 A.2d at 62.  Because B&M has failed to state a necessary element of a claim for breach of implied contract for either the Atkins or the Venetian Project disputes, these claims must be dismissed.

### D.  Quantum Meruit

In addition, B&M alleges that Fireman's is liable to pay attorneys' fees under a theory of quantum meruit.  A claim for quantum meruit recovery may arise from an implied-in-fact contract or a quasi-contractual duty[3] which requires compensation to be rendered from a party that has been unjustly enriched.  *Vereen*, 623 A.2d at 1193.  "Unjust enrichment occurs when a person retains a benefit . . . which in justice and equity belongs to another."  *Jordan Keys*, 870 A.2d at 63.

Again, on almost identical facts, *Jordan Keys* addressed the issue of quantum meruit recovery.  The District of Columbia Court of Appeals held that Jordan Keys could not recover on a quantum meruit theory because St. Paul was not *unjustly* enriched, since "it was contemplated from the outset of the malpractice suit . . . against the Hospital that St. Paul would receive the benefits of Jordan Keys' representation of the Hospital."  *Id.* at 65.  The court went on to explain:

> There can be no doubt that the Hospital's bankruptcy significantly altered the legal terrain insofar as Jordan Keys was concerned.  Jordan

---

[3] A quasi-contract is a legal fiction by which a court permits contractual recovery where there is no contract, but where "circumstances are such that justice warrants a recovery as though there had been a promise."  *Jordan Keys*, 870 A.2d at 63 (quoting Black's Law Dictionary 324 (6th Ed. 1990)).

> Keys had expected to be fully compensated by the Hospital, and its
> client's bankruptcy shattered these expectations.  Nevertheless, in the
> absence of some unanticipated and unjust enrichment of St. Paul, the
> loss resulting from the Hospital's inability to meet its obligations must
> be borne by the party that contracted with the Hospital, namely, Jordan
> Keys.

*Id*. at 66.

Similarly here, B&M expected to be fully paid by its client Jones, with whom B&M had express contingency fee contracts.  Also, from the outset, B&M contemplated that its representation of Jones would benefit Fireman's.  As alleged in the Amended Complaint, B&M defended Fireman's "pursuant to Jones's indemnification obligation."  Am. Compl. ¶ 53.  While Fireman's benefitted from B&M's legal services, Fireman's was not *unjustly* enriched.  The Court will dismiss B&M's claim for quantum meruit recovery.[4]

### E.  Account Stated – Atkins Project

An account stated is found where there is "either an express or an implied agreement as to the amount due, and . . . an allegation that the account was in fact stated or agreed to."  *Chinn v. Lewin*, 16 F.2d 512, 515 (D.C. 1926); *see First Nat'l Realty Corp. v. Impact Adver., Inc.*, 206 A.2d 579, 580 (D.C. 1965) (the essence of an account stated is a promise of payment and acceptance of such promise).  The mere mailing of a bill, and the recipient's silence, do not reflect an agreement to pay.  *Chinn*, 16 F.2d at 515; *First Nat'l Realty*, 206 A.2d at 580.

The Amended Complaint alleges that B&M sent invoices to Fireman's for B&M's

---

[4] Note that B&M's quantum meruit claim related to the Venetian Project dispute is barred by the applicable three year statute of limitations.  D.C. Code § 12-301(7) (3 year limitations period for implied contracts) & (8) (3 year limitations period for claims not otherwise specifically prescribed).

work on the Atkins Project dispute and that Fireman's was silent upon receiving them.  Am. Compl.

¶¶ 58-59.  B&M alleges that Fireman's agreed to pay by remaining silent.  These allegations are

insufficient to support a claim for an account stated.  *Chinn*, 16 F.2d at 515; *First Nat'l Realty*, 206

A.2d at 580.  Moreover, as explained above, there is no express or implied contract between B&M

and Fireman's for the payment of attorneys' fees to B&M.  Because there is no express or implied

agreement and no allegation that Fireman's in fact agreed to pay, B&M has failed to state a claim for

an account stated, and the claim will be dismissed.

## IV.  CONCLUSION

For the reasons explained above, Fireman's motion to dismiss [Dkt. # 25] will be

granted, and this case will be dismissed.  A memorializing order accompanies this Memorandum

Opinion.


Dated: January 5, 2007                          _____/s/_____
                                                ROSEMARY M. COLLYER
                                                United States District Judge